Scott Roberts & others[1] *vs.* Enterprise Rent-A-Car Company of Boston, Inc.

Suffolk. October 7, 2002. - November 27, 2002.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Statute,* Construction. *Motor Vehicle,* Lease agreement. *Words,* "Collision damage waiver."

In an action brought by automobile renters alleging that the defendant automobile rental company sold collision damage waivers (CDWs) in violation of G. L. c. 90, § 32E½, this court concluded that the defendant had not failed to display information regarding CDWs in the manner and to the extent required by that statute, where G. L. c. 90, § 32E½, as then in effect, required that an automobile rental agreement include a notice to an automobile renter advising that purchase of a CDW may not be necessary, without specifying precisely where the notice must be; where, since subsection (C) (2) of G. L. c. 90, § 32E½, controlled, the notice was required to be included in the rental agreement; and where the so-called "ticket jacket" page on which the CDW notice was contained was part of the rental agreement. [190-196]

Civil action commenced in the Superior Court Department on October 5, 1999.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael A. Kahn,* of California (*John H. Henn* with him) for the defendant.

*Edward F. Haber* (*Lee M. Berger & Todd S. Heyman* with him) for the plaintiffs.

*Stephen D. Poss, Christopher D. Moore, & S. Jason P. Baletsa* for The Hertz Corporation & another, amici curiae, submitted a brief.

*Thomas F. Reilly,* Attorney General, & *Gerald D'Avolio, Jr.,*

---

[1] Rebecca Perkins and Arielle Parker.

Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

COWIN, J. The plaintiffs brought this action against the defendant, Enterprise Rent-A-Car Company of Boston, Inc. (Enterprise), alleging that Enterprise sold collision damage waivers (CDWs) in violation of G. L. c. 90, § 32E ½, and G. L. c. 93A, § 2 (*a*).[2] Section 32E ½ contains requirements for notices to automobile renters advising that purchase of a CDW may not be necessary (CDW notices).[3] A judge in the Superior Court granted partial summary judgment to the plaintiffs on the ground that Enterprise failed to display information regarding CDWs in the manner and to the extent required by § 32E ½. The judge reported the case to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), and asked two questions.[4] We granted the parties' applications for direct appellate review, and now vacate the judge's order.[5]

1. *Background.* The case is one of statutory interpretation only. The salient facts are not in dispute. Enterprise is a rental company whose business practices regarding CDWs are governed by G. L. c. 90, § 32E ½, which defines a rental agreement as "any written agreement setting forth the terms and conditions" for automobile rental. G. L. c. 90, § 32E ½ (A). A CDW is defined as:

[2]The plaintiffs claim to represent a class of "[a]ll persons and entities who, on and after May 27, 1995, rented a private passenger automobile from [Enterprise] in the Commonwealth of Massachusetts." The judge deferred ruling on class certification pending this appeal.

[3]General Laws c. 90, § 32E ½, has recently been amended in material respects resolving the very problem this case raises. St. 2002, c. 232, § 2. See *infra* at 195.

[4]The first question need not concern us, as the parties agree in their briefs on the answer to that question and have neither briefed nor argued the issue. See *O'Brien* v. *Dwight*, 363 Mass. 256, 276 (1973) (court not required to decide question not adequately argued even though specifically reported by judge). See note 6, *infra.* The second question asks: "Whether, in using its ticket jacket form of rental agreements, Enterprise used rental agreements that failed to display information regarding [CDWs] in the manner and to the extent required by G. L. c. 90, [§] 32E ½?" We answer the question only to the extent necessary to resolve the basic issues. *McStowe* v. *Bornstein*, 377 Mass. 804, 805 n.2 (1979).

[5]We acknowledge the amicus briefs filed by the Attorney General and by The Hertz Corporation and Avis Rent A Car System, Inc.

"[A]ny contract or contractual provision whether separate from or a part of a rental agreement, whereby the rental company agrees, for a charge, to waive . . . claims against the renter for damages to or loss of the [vehicle] during the term of the rental agreement." *Id.*

Subsection (C) (1) states:

"A rental company, in a rental agreement for a term of thirty days or less, may not sell a [CDW] unless the renter agrees to such [CDW] in writing by initialing the appropriate portion of the rental agreement at the time the rental agreement is executed."

Throughout the relevant time, subsection (C) (2), inserted by St. 1990, c. 440, § 1, stated:

"No rental company may sell or offer to sell a collision damage waiver unless the rental agreement which applies to the particular transaction includes the notice required in section one."

The reference in the last words of subsection (C) (2) to the notice in "section one" is ambiguous and unexplained, but the parties agree (and the only logical reading is) that the applicable notice is provided in subsection (B) (2). This subsection states:

"[E]ach [CDW] must display the following notice in no smaller print than ten point type:

" 'NOTICE: This contract offers, for an additional charge, a Collision Damage Waiver to cover your financial responsibility for damage to the rental vehicle. Your personal automobile insurance may already cover you for damage to a rental car. The purchase of a Collision Damage Waiver is optional and may be declined. For Massachusetts residents: If you have an automobile policy on your personal vehicle with coverage for collision, your policy will cover collision damage to the rental vehicle, less the deductible on your policy. If you have comprehensive coverage on your vehicle, your policy will cover loss on the rental vehicle caused by fire, theft or vandalism, less the deductible on your policy. Drivers who hold poli-

cies in other states should check with their insurance agents to determine whether their policies extend to rental vehicles.' "

Violation of § 32E ½ is punishable by a fine or civil penalty in an action brought on behalf of the Commonwealth. G. L. c. 90, § 32E ½ (D). The director of consumer affairs and business regulation is directed to inform the Attorney General (charged with enforcement of the statute) of violations. G. L. c. 90, § 32E ½ (E).

The plaintiffs rented automobiles in Massachusetts from Enterprise using the so-called "ticket jacket form" of rental agreement.[6] This form, in use since May, 1997, consists of four attached pages. The first page contains boxes to be filled out on the front, and terms and conditions on the back. The next two pages are carbonless duplicates of the first, identical except that the terms and conditions are not reproduced on the back of the second page but are on the back of the third page, the customer copy. The fourth page is the so-called "ticket jacket."[7] After the customer initials and signs the agreement on the first page, the ticket jacket page remains attached to the customer copy and could be folded over it. In the center of the first page of the agreement are boxes where the customer initials accepting or declining CDW and, in the bottom left, the following notice appears in type more prominent than most of the other type on the page: "See ticket jacket for Collision Damage Waiver Notice Addendum, Mass. Law Chap. 90, Sect. 32E ½ hereby incorporated by reference and made part hereof." The bottom left quarter of the front of the ticket jacket (the fourth page of the agreement) contains a CDW notice, the language and size of which the parties agree satisfied § 32E ½. The CDW notice contained a heading in boldface capital letters: "COLLISION DAMAGE WAIVER NOTICE ADDENDUM."

2. *Discussion.* The judge concluded that the ticket jacket form failed to display information regarding CDWs "in the manner and to the extent required by [§ 32E ½]," and to this

---

[6]The first reported question concerned another form of agreement, the so-called "addendum form."

[7]It was not labelled "ticket jacket" until November, 1999.

extent granted partial summary judgment for the plaintiffs. We must therefore resolve whether the notice provided complies with the requirements of § 32E ½. There is no dispute that the language and type size requirements are satisfied. The only issue is the location of the CDW notice. The plaintiffs argue that subsection (B) (2) controls where the CDW notice must appear, and that it must be "display[ed]" *in* the *CDW.* Enterprise argues that it is subsection (C) (2) that controls, and thus the notice must be "include[d]" *in* the *rental agreement.* We reject the plaintiffs' interpretation and conclude that the notice must be included in the rental agreement. "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Commonwealth* v. *Hinds,* 437 Mass. 54, 63 (2002), quoting *Commonwealth* v. *Smith,* 431 Mass. 417, 421 (2000).

Section 32E ½ "in certain aspects lacks precision and verbal consistency." *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.,* 371 Mass. 186, 190 (1976), quoting *LaPierre* v. *Massachusetts Comm'n Against Discrimination,* 354 Mass. 165, 174 (1968).[8] Read literally, subsection (C) (2) referred to a provision of the statute ("section one") nowhere to be found. The ambiguity is exacerbated by the way the statute uses the term "CDW." "CDW" is defined as a "contract or contractual provision." Read literally, "CDW" refers to *language.* Elsewhere in the statute, the term "CDW" is used to refer not to contractual language, but to the *product* the language creates. This must be so, for it would be absurd to read subsection (C) (1) to authorize sale of a "contract or contractual provision."

---

[8]Our decision is not to be construed as any comment on whether a statute with these ambiguities could constitutionally be applied criminally or even whether its civil penalties could be enforced. These issues were not raised by the reported questions. Similarly, another issue, whether G. L. c. 90, § 32E ½, contains a private right of action and, if not, whether by logical extension, the Legislature has precluded a claim under G. L. c. 93A for the same behavior, has not been raised. Because it is not necessary to decide these matters to resolve the basic issue before us, we do not reach them. *McStowe* v. *Bornstein, supra* at 805 n.2.

"Where, as here, '[t]he draftsmanship is faulty . . . the duty devolves upon us to give . . . [the statute] a reasonable construction.' " *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, *supra*, quoting *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 528 (1964). "In doing so, we should take care to construe the statute to carry out the legislative intent . . . giving effect to all words in the statute but not overemphasizing any" (citations omitted). *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, *supra* at 190-191.

Section 32E ½ is clearly designed to benefit consumers who rent private passenger automobiles by notifying them that purchase of CDW might duplicate coverage already provided by their automobile insurance. Although we interpret consumer protection statutes broadly to effectuate their remedial purposes, see, e.g., *Shepard* v. *Finance Assocs. of Auburn, Inc.*, 366 Mass. 182, 191 (1974), we must remain faithful to the legislative intent. We conclude that the Legislature did not intend to specify precisely where in the rental agreement the CDW notice must appear. In doing so, we conclude that it is subsection (C) (2) that provides the operative language, not subsection (B) (2). Subsection (C) (2) simply required that a CDW not be sold "unless the *rental agreement . . . includes*" the CDW notice (emphasis added). G. L. c. 90, § 32E ½ (C) (2), inserted by St. 1990, c. 440, § 1. We impart to this language its plain and ordinary meaning. *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 537 (1992). See *School Comm. of Gloucester* v. *Gloucester*, 324 Mass. 209, 212 (1949) (court must construe various statutory provisions concerning subject matter in issue to give rational and workable effect to whole as far as practicable). A rental company that included the CDW notice *in* the rental agreement located it in compliance with § 32E ½.

Our interpretation is consistent with this and other basic principles of statutory construction. Had the Legislature intended to require that the notice appear in a *particular* location, it could have done so easily, as it has elsewhere in the General Laws in the context of consumer contracts. See, e.g., G. L. c. 93, § 68D (*a*) (contract for purchase of services of credit services organization must contain "conspicuous statement . . .

in immediate proximity to the space reserved for the buyer's signature"); G. L. c. 255D, § 9 D (retail instalment sale agreement shall contain notice "appearing conspicuously directly above the space reserved . . . for the signature of the buyer"); G. L. c. 255D, § 27 A (revolving credit agreement shall contain notice "appearing conspicuously directly above the space reserved . . . for the signature of the buyer"). See also *Resendes* v. *Boston Edison Co.*, 38 Mass. App. Ct. 344, 354 (1995) (court declined to insert language Legislature omitted especially where such language found elsewhere in General Laws).

Other States with statutes requiring a CDW notice in specific statutory language have stated expressly where the notice is to appear. See, e.g., Colo. Rev. Stat. Ann. § 6-1-203(1)(e) (West 2002) (agreement containing CDW "shall display" notice "on the *face* of the agreement, set apart and in bold-faced type . . . at least as large as ten-point type" [emphasis supplied]). See also Kan. Stat. Ann. § 50-657(e) (1994); La. Rev. Stat. Ann. § 2091.5 B(5) (West 1995); Or. Rev. Stat. § 646.859(2) (2001); Va. Code Ann. § 59.1-207.31 B (Michie 2001). Each of these statutes predates § 32E ½ and could have been used as guidance by our Legislature if it intended to require the notice to appear in a specific location. The Legislature's silence on the subject cannot be ignored. Cf. *First Nat'l Bank* v. *Judge Baker Guidance Ctr.*, 13 Mass. App. Ct. 144, 153 (1982) (concluding from reading Massachusetts statute and statutes of other jurisdictions that had Legislature intended to provide for equitable apportionment, "it knew how to do so").

We turn now to the plaintiffs' construction of the statute: that subsection (B) (2) requires that the CDW notice be *in* the *CDW*. First, we note that this construction would be an odd way for the Legislature to impose a specific location requirement. The Massachusetts statutes discussed above show that the Legislature used quite specific language when it intended to do so in similar contexts. Its failure to do so here makes the plaintiffs' construction quite unlikely. In addition, the plaintiffs' interpretation makes subsection (C) (2)'s requirement that the rental agreement *include* the CDW notice superfluous, a disfavored result. See *Acting Supt. of Bournewood Hosp.* v. *Baker*, 431 Mass. 101, 105 (2000). Subsection (A) permits the CDW provision to be

"separate from" the rental agreement. Thus, the plaintiffs' interpretation would require the CDW notice to be repeated in multiple places, whereas the statute nowhere suggests any such intent. We interpret statutes as a whole to produce internal consistency. *Id.* at 104, quoting *Telesetsky* v. *Wight,* 395 Mass. 868, 873 (1985).

We cannot ignore the practical effect of the plaintiffs' interpretation. See *North Shore Realty Trust* v. *Commonwealth,* 434 Mass. 109, 111-112 (2001); *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 489 (1941) (construction of ordinance that would lead to absurd and unreasonable conclusion should not be adopted where language is fairly susceptible to construction that would lead to logical and sensible result). The plaintiffs would locate the "CDW" in the box on the first page of the rental agreement requiring a customer to initial acceptance or declination:

| RENTER ACCEPTS RENTER DAMAGE RESPONSIBILITY  X | RENTER REQUESTS OPTIONAL PARTIAL DAMAGE RENTER WAIVER (DW) AT DAILY FEE SHOWN IN ADJOINING COLUMN, SEE REVERSE. THIS IS NOT INSURANCE.  X |
|---|---|

According to the plaintiffs, the notice must be "in" the boxes above. The language of the statute suggests that this cannot be correct. Subsection (C) (1) requires initialing of the "appropriate portion" of the rental agreement rather than the "CDW," implying that the "appropriate portion" might be separate from the "CDW." In addition, although they renounce this argument now, the plaintiffs at one point below argued that the paragraph on the reverse side of the rental agreement, stating the "terms and conditions," also might be viewed as the CDW, or part thereof.[9] This paragraph contains some elements of what the statute defines to be a "CDW" (the terms of the agreement to waive damage claims against the renter). The Legislature could not have intended the notice to be placed near this paragraph, as that would banish the notice to obscurity. Nor would it make

---

[9]That paragraph states, in relevant part: "5. DAMAGE TO RENTED CAR: Renter is responsible for and agrees to pay Owner the fair market value for replacing and/or repairing damage to the rented car . . . . If Owner offers and Renters agrees to pay an additional fee for DAMAGE WAIVER, renter is relieved of any deductible on renter's policy, and an additional amount, the total of renter's deductible and the additional amount will not exceed $1,000.00."

sense to require the identical notice to be duplicated in both places.

Our view that subsection (B) (2) does not include a location requirement is further supported by the recent amendment to § 32E ¹/₂. The Legislature has amended subsection (C) (2) to provide: "No rental company may sell or offer to sell a [CDW] unless the rental agreement . . . includes *on the signature page of the individual rental agreement* . . . the notice required in paragraph (1) of subsection (B)" (emphasis supplied). G. L. c. 90, § 32E ¹/₂ (C) (2), as amended by St. 2002, c. 232, § 2. Thus, the Legislature has now inserted a location requirement not by amending subsection (B) (2), but by amending subsection (C) (2). This corroborates the conclusion we have reached: that it was (C) (2), not (B) (2), that stated *where* the CDW notice was to be located.

We also reject the plaintiffs' argument that the ticket jacket page was not part of the "rental agreement." While § 32E ¹/₂ defines "rental agreement" as "any written agreement setting forth the terms and conditions" for automobile rental, it does *not* require each page to state at least one term or condition in order to be considered a component of the agreement. The CDW notice contained on the ticket jacket page was physically part of the rental agreement and was explicitly referenced on the first page of the agreement. Cf. Restatement (Second) of Contracts § 132 comment c at 343 (1979) (document physically attached to signed writing is part of contract under Statute of Frauds); 4 A. Corbin, Contracts § 23.3 at 781 (rev. ed. 1997) (same); 10 S. Williston, Contracts § 29:30 (4th ed. 1999) (same). Contrary to the plaintiffs' assertion that the ticket jacket was merely an "advertising sheet," the ticket jacket page also contained information about supplemental liability protection and personal accident insurance, both of which were discussed on the face of the agreement and also in the terms and conditions on the reverse side. As noted recently by the Appeals Court, "Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Cadle Co.* v. *Vargas*, 55 Mass. App. Ct. 361, 366 (2002), quoting *Fishman* v. *LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001). The same is true for statutory interpretation. *Sun Oil Co.* v. *Director*

*of the Div. on the Necessaries of Life*, 340 Mass. 235, 238 (1960) (statutes should be interpreted with sound judgment and common sense). Common sense, as well as rules of construction, indicate that the CDW notice was included in the agreement "setting forth" the terms and conditions of rental.

The plaintiffs also argue that Enterprise violated § 32E ½ because it failed to "display" the notice with sufficient prominence. The plaintiffs refer to our interpretation of "conspicuous" in *Hunt* v. *Perkins Mach. Co.*, 352 Mass. 535, 539-540 (1967) (interpreting § 2-316 of Uniform Commercial Code), and urge that we use a "similar test" to define the word "display." The plaintiffs in effect would modify "display" with a word such as "conspicuous." We need not try to decide whether the "display" at issue is "conspicuous," a term which invites subjective interpretation. The Legislature has expressly established how the notice is to appear — in ten-point type. Whether a given reader would consider this to be conspicuous in the context of the form is not relevant. Contrast examples where the Legislature, rather than expressly define how the notice is to look, has utilized the term "conspicuous." See, e.g., G. L. c. 93, § 18B, first par. (coin-operated laundry "shall display, in a conspicuous manner," notice to consumers of drying time); G. L. c. 138, § 25C (*e*) (list of minimum consumer resale price of alcoholic beverages "shall be conspicuously displayed"); G. L. c. 149, §§ 185 (*g*) and 187 (*h*) (public employers and health care facilities "shall conspicuously display" notice of rights against retaliation).

We hold that before the recent amendment, § 32E ½ required that the rental agreement include the notice, without specifying precisely where the notice must be. The plaintiffs' G. L. c. 93A claims relative to the ticket jacket form were founded on alleged violations of § 32E ½. As we have concluded that there was no violation, those claims must be dismissed. We vacate the judge's order and remand this case for further proceedings consistent with this opinion.

*So ordered.*