368          466 Mass. 368 (2013)

Brigade Leveraged Capital Structures Fund Ltd. *v.* PIMCO Income Strategy Fund.

BRIGADE LEVERAGED CAPITAL STRUCTURES FUND LTD.
& another[1] *vs.* PIMCO INCOME STRATEGY FUND & another.[2]

Suffolk. May 6, 2013. - September 11, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Business Trust. Trust,* Business trust. *Corporation,* By-laws, Stockholder, Board of directors. *Contract. Words,* "On at least an annual basis."

This court concluded that, in the circumstances of the case, a requirement under the bylaws of a closed-end investment company organized as a Massachusetts business trust under G. L. c. 182, that a regular meeting of the shareholders for the election of trustees be held "on at least an annual basis" meant that an annual shareholders' meeting must be held no later than one year and thirty days after the last annual shareholders' meeting. [373-380]

CIVIL ACTION commenced in the Superior Court Department on December 1, 2011.

The case was heard by *Peter M. Lauriat,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John C. Ertman,* of New York (*C. Thomas Brown* with him) for the defendants.

*Joseph S. Allerhand,* of New York (*Patrick J. O'Toole, Jr.,* with him) for the plaintiffs.

The following submitted briefs for amici curiae:

*Peter H. Mixon,* of California, for California Public Employees' Retirement System.

*Jeff Mahoney,* of the District of Columbia, for Council of Institutional Investors.

*Jesse M. Fried,* pro se.

GANTS, J. Under Section 10.2 of the bylaws of the defendants,

---

[1]Brigade Capital Management, LLC.
[2]PIMCO Income Strategy Fund II.

466 Mass. 368 (2013)                                                369

Brigade Leveraged Capital Structures Fund Ltd. *v.* PIMCO Income Strategy Fund.

PIMCO Income Strategy Fund and PIMCO Income Strategy Fund II (collectively, "Funds" or "defendants"), "regular meetings of the Shareholders for the election of Trustees . . . shall be held, so long as Common Shares are listed for trading on the New York Stock Exchange, on at least an annual basis." The issue on appeal is the meaning of "on at least an annual basis." The plaintiffs, Brigade Leveraged Capital Structures Fund Ltd. and Brigade Capital Management, LLC (collectively, "Brigade" or "plaintiffs"), contend that the bylaws require that an annual meeting of shareholders of each of the Funds be held in or within twelve months of the last annual shareholder meeting. The defendants contend that the bylaws require only that one annual shareholders' meeting be held each fiscal year for each of the Funds. We conclude that "on at least an annual basis" means that an annual shareholders' meeting for each of the Funds must be held no later than one year and thirty days (395 days) after the last annual shareholders' meeting.[3]

*Background.* The defendant Funds are closed-end investment companies registered under the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-5(a)(1)(2) (2006), that are organized as Massachusetts business trusts under G. L. c. 182.[4]

---

[3]We acknowledge the amicus briefs submitted by the California Public Employees' Retirement System, Professor Jesse M. Fried, and the Council of Institutional Investors.

[4]A Massachusetts business trust is:

> "a form of business organization . . . consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the share into which the beneficial interest in the property is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds."

*Hecht* v. *Malley*, 265 U.S. 144, 146-147 (1924). See G. L. c. 182, § 1 (defining business trust as "a trust operating under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares").

A Massachusetts business trust may operate in a similar fashion to a corporation:

> "Title to property in one case is held by the corporation and in the

The plaintiffs are the second-largest beneficial owners of preferred shares of each of the Funds.

Each of the Funds is governed by its Amended and Restated Agreement and Declaration of Trust (declaration of trust), dated August 14, 2003, and October 4, 2004, respectively. These declarations of trust are identical in all respects relevant to this case. Article IV, § 1, of each declaration of trust requires the Funds to hold an annual meeting:

> "An initial annual meeting of Shareholders or special meeting in lieu thereof shall be called to be held not more than fifteen months after Shares are first sold pursuant to a public offering; subsequent annual meetings of Shareholders or special meetings in lieu thereof (each an 'annual meeting') shall be held as specified in the Bylaws."

Section 10.2 of each of the Funds' bylaws[5] states, in pertinent part:

> "Except as provided in the next sentence, regular meetings of the Shareholders for the election of Trustees . . . shall be held, so long as Common Shares are listed for trading on the New York Stock Exchange, *on at least an annual basis*, on such day and at such place as shall be designated by the Trustees. In the event that such a meeting is not held in any annual period if so required, whether the omission be by oversight or otherwise, a subsequent special meeting may be called by the Trustees and held in

other by trustees; centralized management is effected in one by a board of directors and in the other by trustees; the continuity of both the corporation and the trust is uninterrupted by the death of a stockholder or shareholder; the transfer of beneficial interests in both is readily and easily accomplished by the transfer of the shares and the shareholders in each seek limited personal liability. The sum total of these distinctive features of a business trust has brought trusts into such close resemblance to corporations that they have been frequently considered as corporations, sometimes by virtue of constitutional or statutory provisions and sometimes without such provisions."

*State St. Trust Co.* v. *Hall*, 311 Mass. 299, 302-303 (1942). See *Richardson* v. *Clarke*, 372 Mass. 859, 861 (1977) ("Business trusts possess many of the attributes of corporations").

[5]The bylaws of the defendants, PIMCO Income Strategy Fund and PIMCO Income Strategy Fund II (collectively, "Funds" or "defendants"), are also identical in all respects relevant to this case.

lieu of such meeting with the same effect as if held within such annual period." (Emphasis added.)

In addition to these provisions in the declarations of trust and bylaws regarding an annual meeting, because the Funds' shares are listed for trading on the New York Stock Exchange, they must also comply with § 302.00 of the New York Stock Exchange Listed Company Manual (NYSE manual), which requires them "to hold an annual shareholders' meeting during each fiscal year."[6]

The PIMCO Income Strategy Fund held its first annual meeting on November 16, 2004. In subsequent fiscal years, both Funds held joint annual meetings on December 15, 2005;[7] December 14, 2006; December 18, 2007; December 16, 2008; December 16, 2009; and December 14, 2010. The Funds' proxy statement issued on November 12, 2010, stated that "[i]t is currently anticipated that each Fund's next annual meeting of Shareholders after the [December 14, 2010] Meeting . . . will be held in December[,] 2011."

On September 21, 2011, Brigade delivered to the Funds a written notice stating Brigade's intent to nominate one of their partners for election as a preferred shares trustee of each fund at the 2011 annual meeting. On October 11, 2011, the Funds issued a press release stating that their joint annual meeting was being rescheduled to July 31, 2012, the last day of the Funds' 2012 fiscal year.[8]

On December 1, 2011, Brigade filed a verified complaint in the Superior Court alleging that the Funds intended to commit a breach of § 10.2 of the bylaws by postponing the annual meeting to a date that was nineteen months after the Funds' last annual meeting on December 14, 2010. The complaint sought,

---

[6]General Laws c. 156D, § 7.01 (*a*), requires Massachusetts corporations to hold annual shareholders' meetings, but there is no comparable statutory provision requiring business trusts to hold annual meetings.

[7]The PIMCO Income Strategy Fund II did not list its shares for sale on the New York Stock Exchange until October of 2004, and held its first annual meeting jointly with the PIMCO Income Strategy Fund on December 15, 2005.

[8]The shareholders' meetings of two other funds that previously had held their annual meetings in conjunction with the defendant Funds were not rescheduled and took place on December 19, 2011.

among other things, an injunction requiring the Funds "to hold the 2011 annual meeting . . . as soon as practical," and a declaration that § 10.2 of the Funds' bylaws requires "that a meeting of shareholders for the election of trustees . . . is held at least once within any [twelve] month period."

The plaintiffs filed a motion for expedited discovery to "understand the Funds' interpretation of the [b]ylaws and [to] uncover what reasons, if any, the Funds' trustees intend to advance as purported justification for the delay of the 2011 annual meeting." A judge in the Superior Court denied the motion after hearing, concluding that the discovery that was requested did not "go to the issue of what the bylaws mean," and that she did not think that the Funds had committed a breach of the bylaws by delaying the annual meeting based "on the plain language of the bylaws."

The parties filed cross motions for summary judgment. On February 21, 2012, another judge in the Superior Court interpreted the bylaws differently and granted summary judgment to Brigade. This judge ruled that the Funds' postponement of their annual shareholder meeting to July 31, 2012, violated § 10.2 of the bylaws, and ordered the Funds to "hold the annual shareholder meeting for the year 2011 as soon as practicable after the date of this order." The judge also declared that § 10.2 of the bylaws requires the Funds "to schedule future annual shareholder meetings in or within twelve months of their last annual shareholder meetings." The judge noted that, "[i]f the [b]ylaws permitted the [F]unds to hold a meeting once every calendar year or every fiscal year, then the Funds could effectively disenfranchise [their] shareholders for extended periods by holding meetings [twenty-three] months apart," for instance, by holding "shareholder meetings in December, 2012, then January, 2013 (after providing shareholders with at least seven days notice) and then [holding] their next meeting in December, 2014." The judge reasoned that the requirement that annual shareholder meetings be held "on an annual basis" reflects "[s]ound corporate governance principles" that ensure that shareholders have a "timely and essential voice" where every twelve months they can "approve or disapprove the Funds' directions."

466 Mass. 368 (2013)                                    373

Brigade Leveraged Capital Structures Fund Ltd. *v.* PIMCO Income Strategy Fund.

Judgment entered on February 29, 2012, but on March 15, 2012, a single justice of the Appeals Court granted the defendants' motion for a stay of the judgment pursuant to Mass. R. A. P. 6 (a), as appearing in 454 Mass 1601 (2009). The single justice determined from "[r]eading the various provisions of the by-laws together, and viewing the by-laws in the background context set by the [New York Stock Exchange] rules, . . . the only hard and fast, enforceable commitment that the [Funds] made was to hold an annual shareholders meeting once per fiscal year." Therefore, he concluded that Brigade was "unlikely to be able to succeed in showing that [they] had a contractual right to require that the next shareholder meeting be held earlier than July 31, 2012." As a result of the stay of the judgment pending appeal, the Funds' annual shareholders' meetings took place on July 31, 2012, rendering moot any appeal of the judge's order to hold an annual shareholders' meeting "as soon as practicable." However, the appeal of that part of the judgment that declares that the Funds must schedule all future annual shareholder meetings "in or within twelve months" of their last annual shareholder meeting is not moot. We transferred the Fund's appeal to this court on our own motion.

*Discussion.* "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, . . . the moving party is entitled to a judgment as a matter of law.' " *Go-Best Assets Ltd.* v. *Citizens Bank of Mass.*, 463 Mass. 50, 54 (2012), quoting *Augat Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); *Kourovacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-712 (1991).

A corporation's articles of organization and its bylaws are a contract between the shareholders and the corporation. See *Chokel* v. *Genzyme Corp.*, 449 Mass. 272, 275 (2007) (articles of organization); *Geneneral Convention of the New Jerusalem in the United States of Am., Inc.* v. *MacKenzie*, 449 Mass. 832, 835 (2007) (*MacKenzie*) (bylaws). So, too, a declaration of trust and a business trust's bylaws are a contract between the trustees of the trust and the shareholders that defines the rights of the

trust's shareholders.[9] See *State St. Trust Co.* v. *Hall*, 311 Mass. 299, 305-306 (1942). See generally Annot., 88 A.L.R.3d 704, 729-730 (1978) (declaration of trust is "determinative of the nature of the organization and of the details of its operation"). We therefore interpret them according to traditional principles of contract law. *MacKenzie, supra.* "The words of a contract must be considered in the context of the entire contract rather than in isolation." *Id.* "When the words of a contract are clear, they must be construed in their usual and ordinary sense." *Id.* "Contract language is ambiguous 'only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.' " *Southern Union Co.* v. *Department of Pub. Utils.*, 458 Mass. 812, 820 (2011), quoting *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). "[E]xtrinsic evidence may be admitted when a contract is ambiguous on its face or as applied to the subject matter." *MacKenzie, supra* at 836.

The requirement in § 10.2 of the bylaws that the annual shareholders' meeting "shall be held, so long as Common Shares are listed for trading on the New York Stock Exchange, on at least an annual basis," clearly means that an annual shareholders' meeting must be held, at the very least, once every fiscal year. "Normally, a dictionary definition of a term is strong evidence of its common meaning." *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 440 Mass. 796, 801 (2004). "Annual" is commonly defined as "yearly" or "recurring once every year". See, e.g., Black's Law Dictionary 997 (7th ed. 1999) (defining "annual meeting" as "yearly meeting of shareholders"); American Heritage Dictionary of the English Language 75 (3d ed. 1992) (defining "annual" as "[r]ecurring, done, or performed every year"); Webster's New World Dictionary 56 (3d college ed. 1988) (defining "annual" as "happening or appearing once a year"). Although § 10.2 does not explicitly declare whether the "annual basis" refers to a fiscal or a calendar year, it implicitly recognizes that the Funds are subject to the

___

[9]Each of the Funds' Amended and Restated Agreement and Declaration of Trust, dated August 14, 2003, and October 4, 2004, respectively, (declaration of trust) provides that "[e]very Shareholder by virtue of having become a Shareholder shall be held to have expressly assented and agreed to the terms of this Declaration and the Bylaws."

New York Stock Exchange's requirement that its listed companies hold an annual shareholders' meeting, and § 302.00 of the NYSE manual requires such meetings to be held "each fiscal year." Because, wholly apart from the bylaws, the Funds are subject to this requirement under § 302.00 of the NYSE manual, it would be contrary to common sense for § 10.2 to be interpreted to require an annual shareholders meeting each calendar year, where the Funds' fiscal year and the calendar year might not coincide.[10] See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 438 Mass. 187, 195 (2002), quoting *Cadle Co.* v. *Vargas*, 55 Mass. App. Ct. 361, 366 (2002) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons").

On its face, however, § 10.2 is ambiguous as to whether the annual shareholders' meetings must be held at approximate twelve month intervals in different fiscal years, as the judge concluded on summary judgment and as Brigade contends, or at any time during a fiscal year, regardless of the interval of time between them, as the single justice concluded and as the Funds contend.

The Funds point to language in § 10.2 that suggests that the requirement to hold an annual shareholders' meeting remains only "so long as Common Shares are listed for trading on the New York Stock Exchange," and contend that the bylaws impose no obligation regarding the frequency of the annual shareholders' meeting beyond that imposed by the NYSE manual to hold it each fiscal year. We disagree. The bylaws could have provided that the annual shareholders' meeting be held no more frequently than required by the NYSE manual or could have expressly incorporated the time period required by § 302.00 of the NYSE manual, but they do not. Where the Funds intended to limit the bylaws to requirements imposed by law, the Funds knew how to do so. For example, § 10.1 of the bylaws states that shareholders have the power to vote with respect to any manager or advisor "to the extent required by the 1940 Act." Similarly, § 10.6(c) of the bylaws provides that any shareholder who intends to nominate a person for election as a trustee shall deliver "any . . . information . . . required by paragraphs (a),

[10]Section 6.1 of the bylaws allows the Funds' treasurer and ultimately the trustees to set and change the commencement date of the Funds' fiscal year.

(d), (e), and (f) of Item 401 of Regulations S-K [17 C.F.R. § 229.401 (2010)] or paragraph (b) of Item 22 of Rule 14a-101 [Schedule 14A] [17 C.F.R. § 240.14a-101 (2011)] under the Securities Exchange Act of 1934 [15 U.S.C. §§ 78a et seq. (2006 & Supp. V)]." We decline to interpret the bylaws as implicitly adopting or incorporating by reference the time period required in the NYSE manual, where they do not do so explicitly. See *NSTAR Elec. Co.* v. *Department of Pub. Utils.*, 462 Mass. 381, 394 (2012), quoting *Northrop Grumman Info. Tech., Inc.* v. *United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008) ("the language used in a contract to incorporate extrinsic material by reference . . . must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract [rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history]").[11]

The Funds also argue that "on an annual basis" should not be interpreted to mean "at least every twelve months" because § 10.6(c) of the bylaws expressly recognizes that the trustees permissibly might schedule an "annual meeting" more than thirteen months after the previous "annual meeting." We interpret § 10.6 quite differently, and conclude that § 10.6(c), when read in conjunction with § 10.6(a) and § 10.2, suggests that regular annual shareholders' meetings must be scheduled no later than one year and thirty days after the previous year's annual shareholders' meeting.

Section 10.6(c) of the bylaws details the notice provisions that shareholders must follow in order to bring a nomination for election as trustee or any other proposal before an "annual meeting." It provides, in relevant part:

"To be timely, the Shareholder Notice must be delivered to or mailed and received at the principal executive offices

---

[11]The premise of the Funds is that, pursuant to § 10.2 of the bylaws, they are required to hold an annual shareholders' meeting only so long as their common shares are listed for trading on the New York Stock Exchange. Article IV of each of the Funds' declaration of trust provides that "annual meetings of Shareholders . . . shall be held as specified in the Bylaws." We need not resolve this issue because the answer would not change our analysis or conclusion.

of the Trust not less than forty-five (45) nor more than sixty (60) days prior to the first anniversary date of the date on which the Trust first mailed its proxy materials for the prior year's annual meeting; . . . provided, . . . however, if and only if the annual meeting is not scheduled to be held within a period that commences thirty (30) days before the first anniversary date of the annual meeting for the preceding year *and ends thirty (30) days after such anniversary date* (an annual meeting date outside such period being referred to herein as an "Other Annual Meeting Date"), such Shareholder Notice must be given in the manner provided herein by the later of the close of business on (i) the date forty-five (45) days prior to such Other Annual Meeting Date or (ii) the tenth (10th) business day following the date such Other Annual Meeting Date is first publicly announced or disclosed" (emphasis added).

However, § 10.6(a) provides that, as used in § 10.6, "the term 'annual meeting' refers to any annual meeting of Shareholders *as well as* any special meeting held in lieu of an annual meeting" (emphasis added). Under § 10.2, a "special meeting held in lieu of an annual meeting" may be called by the trustees where an annual shareholders' meeting is not held during the required annual period for any reason, including an omission "by oversight." Section 10.2 also provides that "[i]n the event that such a meeting is not held in any annual period . . . a *subsequent* special meeting may be called by the Trustees and held in lieu of such meeting" (emphasis added). Therefore, under § 10.2, a "special meeting held in lieu of an annual meeting," where it is held, takes place "subsequent" to the "annual period" where an annual meeting of shareholders should have been held.[12] Therefore, we conclude that, read in conjunction with § 10.6(a) and § 10.2, § 10.6(c) suggests that a regular annual shareholder meeting must be scheduled within the "annual period," and that the "annual period" ends thirty days after the anniversary date of the last annual meeting. Any annual meeting held after the "annual period" is not a regular an-

---

[12]The Funds have conceded that the annual meeting they scheduled for July 31, 2012, was an annual shareholders' meeting, not a "special meeting held in lieu of an annual meeting."

nual shareholder meeting but a "special meeting held in lieu of an annual meeting" that is governed by different notice requirements.

This interpretation of the bylaws is consistent with how the Funds themselves appeared to interpret the phrase "on at least an annual basis" until Brigade declared their intent to nominate a new trustee and the trustees delayed the meeting from its anticipated December 14, 2010, date to July 31, 2011. Until then, no regular annual shareholder meeting had been held more than thirty days after the anniversary date of the last annual meeting. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. 39, 59 (1991) (in interpreting contract, "conduct of the parties after the signing of the agreements is . . . indicative of their intent"); *Pittsfield & N. Adams R.R.* v. *Boston & Albany R.R.*, 260 Mass. 390, 398 (1927), quoting *Insurance Co.* v. *Dutcher*, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what parties meant, than to see what they have done").

This interpretation is also more consistent with the usual meaning of "on at least an annual basis" than the Funds' interpretation, which, as the judge noted in allowing Brigade's motion for summary judgment, potentially would have allowed the Funds to hold an annual shareholders' meeting in the first month of their fiscal year and not be required again to hold an annual shareholders' meeting until the last month of their next fiscal year, twenty-three months later, which would be closer to a biennial than an annual basis. See *Woogmaster* v. *Liverpool & London & Globe Ins. Co.*, 312 Mass. 479, 481 (1942) (contracts should be construed to give words "their usual and ordinary significance, unless it appears that they are to be given a peculiar or technical meaning").

To the extent that there is any ambiguity in the bylaws as to when a regular annual shareholders' meeting must be held, we construe the ambiguous provisions against the drafters, which here are the Funds. See *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 114 (1987), and cases cited. Moreover, where "bylaw provisions are unclear, we resolve any doubt in favor of the stockholders' electoral rights." *Airgas Inc.* v. *Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010). See *Centaur Partners IV* v. *National Intergroup, Inc.*, 582 A.2d 923, 927

(Del. 1990). The right of shareholders to vote for the trustees of a business trust is one of the most important rights arising from stock ownership. See *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 509 (1928), quoting *Camden & Atl. R.R.* v. *Elkins*, 37 N.J. Eq. 273, 276 (1883) ("The right to hold elections for the directors of a corporation, and to vote at such elections, is a right that is inherent in the ownership of stock"); *Preston* v. *Allison*, 650 A.2d 646, 649 (Del. 1994) ("stockholder's ability to participate in corporate governance through the election of directors is a fundamental part of our corporate law"); *ER Holdings, Inc.* v. *Norton Co.*, 735 F. Supp. 1094, 1100 (D. Mass. 1990) ("one of the most sacred rights of any shareholder is to participate in corporate democracy"). See generally 5 W.M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 2025, at 143 (rev. ed. 2011). The ability to nominate and elect different trustees is a crucial means for shareholders to prevent the entrenchment of poorly performing trustees. See *MM Cos.* v. *Liquid Audio, Inc.*, 813 A.2d 1118, 1127 (Del. 2003) ("if the stockholders are not satisfied with the management or actions of their elected representatives on the board of directors, the power of corporate democracy is available to the stockholders to replace the incumbent directors when they stand for re-election"); *Aronson* v. *Lewis*, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by *Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000) ("The machinery of corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or unfaithful management"). Delay in holding a shareholder election diminishes electoral rights by allowing these trustees to become more deeply entrenched and to continue to harm the interests of shareholders. See *ER Holdings, Inc.* v. *Norton, Co.*, *supra* at 1101 ("The Board's suggestion that its proffered special meeting does not endanger shareholder voting rights, but merely delays them, misses the point. Courts have consistently recognized the irreparable harm associated with delay in these contexts"). Cf. Alterbaum, Control Share Acts, Closed-End Funds, and the Battle for Corporate Control, 17 Stan. J.L. Bus. & Fin. 310, 332 (2012) ("the pressure imposed by takeover attempts on closed-end funds forces the funds' management to engage in value creating activities that raise

share prices"). Accordingly, we hold that any ambiguity in § 10.2 must be construed in favor of allowing the shareholders a timely and effective means of holding the trustees accountable.

Based on all these considerations, we interpret the Funds' bylaws to require that the Funds schedule future annual shareholders' meetings no later than thirty days after the anniversary of their last annual shareholders' meeting.

*Conclusion.* The judgment requiring the Funds "to schedule future annual meetings in or within twelve months of their last annual shareholder meetings" is affirmed as modified to require the Funds to schedule future annual shareholders' meetings no later than thirty days after the anniversary of their last annual shareholders' meeting.

*So ordered.*