NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1637                                        Appeals Court

NEW ENGLAND PRECISION GRINDING, INC.  vs.  SIMPLY SURGICAL, LLC[1]
                          & another.[2]


                        No. 14-P-1637.

       Worcester.     November 2, 2015. - March 9, 2016.

           Present:  Milkey, Carhart, & Massing, JJ.


Uniform Commercial Code, Acceptance of goods, Revocation of
      acceptance.  Indemnity.  Judgment, Interest.  Practice,
      Civil, Instructions to jury, Judgment notwithstanding
      verdict, Verdict.



      Civil action commenced in the Superior Court Department on
August 7, 2006.

      The case was tried before Richard T. Tucker, J., and
motions for the entry of separate and final judgment and to
reach the proceeds of the judgment were heard by him.


      Barry A. Bachrach for the plaintiff.
      Matthew R. Johnson for Simply Surgical, LLC.
      Dale C. Kerester for Iscon Surgicals, Ltd.

_____

      [1] Doing business as Pricon US.

      [2] Iscon Surgicals, Ltd.

CARHART, J. This Superior Court contract action stems from the sale by defendant Simply Surgical, LLC (Simply Surgical) to plaintiff New England Precision Grinding, Inc. (NEPG) of medical device parts manufactured by defendant Iscon Surgicals, Ltd. (Iscon). All three parties appeal from an amended judgment entered on January 8, 2013, in favor of Simply Surgical; Iscon also appeals from an order entered on January 18, 2013, denying its motion for entry of a separate and final judgment and to reach the proceeds of the judgment due to Simply Surgical from NEPG.[3]

On appeal, NEPG argues that the judge wrongly declined to instruct the jury that, under the Uniform Commercial Code (U.C.C.), codified in Massachusetts at G. L. c. 106, NEPG had the right to revoke its acceptance of parts once they were rejected by its customer Kyphon, Inc. (Kyphon). It also complains that the jury's verdict was against the weight of the evidence and its award excessive. Simply Surgical argues that the judge erroneously prevented it from presenting its claim for common-law indemnification against Iscon. Iscon contends that the judge should have corrected the amount of the damages awarded by the jury to include the total unpaid balance sought by Iscon on its account stated.

---

[3] As Iscon failed to make any argument as to the order entered on January 18, 2013, it has waived that issue on appeal. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

We affirm the amended judgment, and the order entered January 18, 2013, denying Iscon's motion.

Background.  We summarize the trial evidence.  NEPG is a Massachusetts-based manufacturer of precision medical components.  In or around 2004, NEPG contracted with Kyphon and agreed to supply Kyphon with medical device parts referred to as stylets and nozzles.[4]  In 2005, Kyphon ordered six lots from NEPG, with each lot containing 25,000 pieces of each component.  Because NEPG could not manufacture the parts at the price point that Kyphon requested, it contracted with Robert Longo, the owner of Simply Surgical, to obtain the parts from Indian manufacturer Iscon.  Iscon shipped the initial order directly to NEPG, but shipped subsequent orders to Longo at Simply Surgical.  The parts were shipped by lot, and Iscon would certify that the parts conformed to the plans and specifications provided by NEPG.

Upon receiving the parts from Iscon or Simply Surgical, NEPG would conduct its own inspection using a process that was approved by Kyphon and which accorded with industry standards for medical devices.  If NEPG approved of the parts, it would

---

[4] Kyphon is a California-based medical device manufacturer which has patented a surgical procedure called "kyphoplasty." The procedure involves the insertion of a solidifying agent between the patient's vertebrae to remove pressure from the spine, and the stylets and nozzles it ordered from NEPG are part of the medical kit designed by Kyphon for use in the procedure.

certify that they conformed to Kyphon's plans and specifications and would ship them to Kyphon. Kyphon would then do its own inspection before accepting or rejecting NEPG's shipment. The purchase orders from NEPG to Simply Surgical neither mentioned Kyphon nor required that the parts ultimately be accepted by Kyphon;[5] rather, the terms were listed as "Net 30 days." The "[d]escription" of the products ordered included "[c]ertifications [r]equired," and the purchase orders contained a directive that the parts are not to be shipped "UNTIL INSPECTION DATA HAS BEEN REVIEW [sic] AND APPROVED BY NEPG."

Early on, NEPG brought to Longo's attention conformity issues that Simply Surgical and Iscon worked to correct. At one point, in order to keep the project moving, Simply Surgical gave NEPG approximately $20,000 in credits. Later, on two occasions after Kyphon rejected lots 4 and 5, which NEPG had certified were conforming, Longo agreed to take the parts back and rework them.[6] When Longo refused to take them back a third time, NEPG used in-house labor to polish and improve the appearance of the parts to Kyphon's satisfaction.

---

[5] Indeed, NEPG took pains to conceal from Kyphon the fact that it was not manufacturing the parts, and from Simply Surgical and Iscon the fact that Kyphon was NEPG's customer.

[6] In 2006, Kyphon issued new appearance standards for the parts it had ordered from NEPG. However, NEPG acknowledged that those standards were not incorporated into NEPG's purchase orders with Simply Surgical.

NEPG promptly paid Simply Surgical for lots shipped in June and July, 2005. However, Simply Surgical received no payments from NEPG from August through November, 2005. From that time through July, 2006, payments from NEPG to Simply Surgical lagged. Indeed, there was one period of several months when NEPG failed to pay Simply Surgical over $100,000, despite having received from Kyphon, during that time, payments totaling $188,000.[7] NEPG's chief financial officer testified that the lag in payment resulted from a "policy" instituted at NEPG as a result of the "quality issues" with previous shipments, whereby NEPG would not "immediately pay" Simply Surgical for parts until NEPG "received notice from Kyphon that the parts were inspected and deemed good." As of January 26, 2006, NEPG owed Simply Surgical $163,331.08. By the spring of 2006, Longo was refusing to ship the remainder of lot 3 until NEPG addressed its outstanding balance with Simply Surgical. He also demanded upfront payment for lot 6, which was waiting to be shipped from India. NEPG refused, and, in early August, 2006, Kyphon canceled its contract with NEPG.

---

[7] Although the owner of NEPG denied that NEPG lacked "a cash flow to pay Simply Surgical in or about 2006," the jury was entitled to credit Longo's testimony that NEPG's owner told him that NEPG failed to pay Simply Surgical because NEPG was protecting its cash flow. Admitted into evidence were NEPG's financial reports indicating that NEPG's monthly cash flow was low or negative during the period it failed to pay Simply Surgical.

NEPG then sued Simply Surgical for breach of contract, breach of the implied warranties of merchantability and of fitness for a particular purpose, and violation of G. L. c. 93A, § 11, alleging that Simply Surgical had supplied defective parts that caused Kyphon to cancel its contract with NEPG. Simply Surgical counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and violation of c. 93A, based upon NEPG's failure to pay. After NEPG's motion to join Iscon was allowed, NEPG amended its complaint to request a judgment declaring that it was not liable to Iscon, and Iscon and Simply Surgical brought claims against each other. Kyphon was not sued.

A jury trial took place over the course of two weeks, with the judge reserving for himself the cross claims of NEPG and Simply Surgical under c. 93A. The judge denied Iscon's motion for a directed verdict at the close of Simply Surgical's case insofar as it was based upon Simply Surgical's alleged failure to show an agency relationship; however, he allowed the motion with respect to Simply Surgical's claim for common-law indemnification. He denied NEPG's request for a jury instruction that NEPG had the right under the U.C.C. to revoke its prior acceptance of parts because NEPG did not give "the proper notice to anyone that [it was] revoking [its] previously-made acceptance." The judge also denied Simply Surgical's

request that he instruct the jury that if they found that Simply Surgical was an agent of Iscon, then Iscon had a common-law duty to indemnify Simply Surgical for its litigation costs.

The jury found that NEPG committed a breach of its contracts and the implied covenant of good faith and fair dealings with Simply Surgical and was liable to Simply Surgical in quantum meruit, and awarded damages in the amount of $125,997.84. The jury further found that Simply Surgical committed a breach of its contract with Iscon and was liable to Iscon "upon an unpaid balance of account," and awarded damages in the amount of $84,150. After a hearing and "careful review of the memoranda of the[] parties," the judge determined that neither Simply Surgical nor NEPG had engaged in an unfair or deceptive act or practice within the meaning of c. 93A. Judgment entered against NEPG and in favor of Simply Surgical awarding damages in "the sum of $125,997.84 plus interest thereon from 03/21/07 through 11/28/2012 in the amount of $86,121.14 and . . . costs of action as provided by law," and, as to the cross claims, against Simply Surgical and in favor of Iscon awarding damages in "the sum of $84,150.00 with interest thereon from 07/15/10 through 11/28/12 in the sum of $35,914.88 and . . . costs of action as provided by law." The judgment also dismissed NEPG's and Simply Surgical's respective c. 93A claims.

After trial, the judge denied NEPG's motion for judgment notwithstanding the verdict and motion for a new trial and for a remittitur on Simply Surgical's counterclaim. He denied Iscon's motion to correct the amount of the jury award and the calculation of prejudgment interest. The judge allowed so much of Simply Surgical's motion to amend the judgment so as to correct a miscalculation of prejudgment interest,[8] but he denied the remainder of the motion, which sought application of a different accrual date and interest rate. As a result, an amended judgment entered, and the original judgment's interest award to Iscon was changed to "7/15/10 through 11/28/12 in the sum of $23,986.42." The judge denied Iscon's motion for entry of separate and final judgment (against Simply Surgical) and to reach and apply the proceeds of the judgment due to Simply Surgical from NEPG.

Discussion. 1. Claims by NEPG. NEPG claims error in the judge's refusal to instruct the jury that it had the right under the U.C.C. to revoke its acceptance of parts once they were rejected by Kyphon. There was no error.

---

[8] In its motion to amend the judgment, Simply Surgical argued that "[a]pplying the time period set forth in the judgment and the 12% interest rate[] yields a pre-judgment interest amount due ISCON of $23,982.75." While the record does not state the interest rate applied by the judge, his allowance of Simply Surgical's motion suggests that it was the statutory prejudgment interest rate set forth in G. L. c. 231, § 6C.

The evidence established that the goods provided by Simply Surgical were "conforming" and that NEPG "accepted" them within the meaning of the U.C.C.  See G. L. c. 106, §§ 2-106(2) and 2-606(1).  Specifically, it was undisputed that NEPG ordered parts from Simply Surgical that it knew Iscon would manufacture according to NEPG's specifications, that Iscon manufactured the parts and certified that they conformed to those specifications, that NEPG did its own inspection before accepting parts, and that NEPG then sent parts to Kyphon with a certification that they conformed to Kyphon's specifications.  As such, NEPG had no right of revocation.  See G. L. c. 106, § 2-607(2), inserted by St. 1957, c. 765, § 1 ("Acceptance of goods by the buyer precludes rejection of the goods accepted"); G. L. c. 106, § 2-608(1), inserted by St. 1957, c. 765, § 1 ("The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him" [emphasis supplied]).

Even if NEPG did have the right to revoke, there was no evidence that NEPG expressed or communicated to Simply Surgical an intent to do so.  See G. L. c. 106, § 2-608(2) ("Revocation of acceptance [under the U.C.C.] . . . is not effective until the buyer notifies the seller of it").  NEPG never provided Simply Surgical with "notice" as that term is defined in the U.C.C., see G. L. c. 106, § 1-202, and while any delay in providing notice could have been justified by NEPG's constant

communication with Longo and Longo's attempts to address NEPG's complaints, see Fortin v. Ox-Bow Marina, Inc., 408 Mass. 310, 318 (1990), NEPG ultimately bore the burden of "proving the date upon which it revoked its acceptance." Jeffco Fibres, Inc. v. Dario Diesel Serv., Inc., 13 Mass. App. Ct. 1029, 1030 (1982). It offered no evidence on this point. Instead, the evidence was clear that "neither party treated nonconforming deliveries as substantially impairing the value of the whole contract so as to constitute a breach of the whole." Bevel-Fold, Inc. v. Bose, Corp., 9 Mass. App. Ct. 576, 581 (1980). NEPG continued to demand parts from Simply Surgical after expressing its dissatisfaction with previous shipments of parts, and NEPG continued to ship Simply Surgical's parts to Kyphon with certifications that they conformed to Kyphon's specifications. NEPG provides no authority for its argument that it could accept goods from Simply Surgical, inspect them, certify that they were conforming, and then revoke acceptance when the parts were rejected by Kyphon. We see no error in the judge's conclusion that there had been no effective revocation of acceptance under the U.C.C., such that NEPG was entitled to the requested instructions. See Jeffco Fibres, Inc., supra ("[A]n effective revocation of acceptance may be accomplished by oral notice . . . or by conduct which unequivocally manifests a desire to

revoke the sale," taking into account "the course of dealing between the parties after the sale and prior to the rejection").[9]

There having been no effective revocation by NEPG, NEPG was obligated under the U.C.C. to pay Simply Surgical. See G. L. c. 106, §§ 2-301, 2-310(a), and 2-607(1). Under the terms of its contracts, NEPG was required to do so within thirty days. See Miller Brewing Co. v. Alcoholic Bevs. Control Commn., 56 Mass. App. Ct. 801, 803 (2002) (credit terms of "net eleven days" meant eleven days within which to pay the seller in full). Although NEPG "really wanted to tie [its] payments [to Simply Surgical] to the acceptance date by Kyphon," the judge correctly observed that "the approval and formal acceptance of the goods by NEPG is the determinative factor under the terms of the NEPG/Simply Surgical contracts, not the acceptance by Kyphon." The parties "easily could have included language expressly" requiring ultimate approval by Kyphon had they so intended, Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 806 (2016); they did not, and "the contract [must] be enforced according to its terms." Mejia v. American Cas. Co., 55 Mass. App. Ct. 461, 465 (2002). Contrast Bevel-Fold, Inc., supra at 578 ("In the agreement, [the buyer] reserved the right to reject cabinets defective in material or workmanship 'at anytime'").

---

[9] For this same reason, the judge correctly denied NEPG's motion for a new trial on the basis that he gave erroneous instructions.

Viewing NEPG's testimony in the light most favorable to Simply Surgical, see Solimene v. B. Grauel & Co., 399 Mass. 790, 792 (1987), NEPG inspected and accepted parts from Simply Surgical before sending them to Kyphon with a certificate of conformity, but "determined . . . that [it] would not immediately pay" Simply Surgical until it "received notice from Kyphon that the parts were inspected and deemed good."  The terms of NEPG's contracts with Simply Surgical were "Net 30 days," yet NEPG failed to make any payments for at least four months.  Thus, the judge properly denied NEPG's posttrial motion for judgment notwithstanding the verdict and motion for a new trial and for a remittitur.  See McCarthy v. Waltham, 76 Mass. App. Ct. 554, 560 (2010), quoting from O'Brien v. Pearson, 449 Mass. 377, 383 (2007) ("Review of these motions requires us to . . . evaluate whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the nonmovant").[10]

---

[10] NEPG's argument that Simply Surgical's taking back of rejected parts established a course of performance whereby Kyphon's acceptance became part of the deal is unavailing in light of the express terms of the contracts.  While a course of performance may illuminate or supply missing contract terms, it will not be construed to contradict express terms.  See G. L. c. 106, § 2-208(2).  See also Affiliated FM Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 845 (1994) ("Express terms are to be given preference in interpretation over course of performance"); Somerset Sav. Bank v. Chicago

The judge did not abuse his discretion in denying NEPG's motion to reduce the jury verdict, see Solimene v. B. Grauel & Co., supra at 803 ("A challenge to the damages awarded as against the weight of the evidence generally is a matter within the judge's discretion"), because "the jury could have reached, honestly and fairly, the award that they did based on the" testimony and the documentary evidence at trial.  Ibid.

2.  Claims by Simply Surgical.  The judge correctly denied Simply Surgical's request to submit its common-law indemnification claim against Iscon to the jury, because such "indemnification [is] available . . . only to a defendant whose liability was vicarious or formal." Economy Engr. Co. v. Commonwealth, 413 Mass. 791, 794 (1992).  While NEPG did allege that Simply Surgical provided it with defective parts that Iscon undisputedly manufactured, NEPG did not bring defective manufacturing claims against Simply Surgical or Iscon.  Instead, NEPG alleged that Simply Surgical was in breach of contract "[b]y its conduct," including a "refus[al] to address the defective product" and wrongfully withholding shipments.

Title Ins. Co., 420 Mass. 422, 427-428 (1995) (in the absence of ambiguity, evidence of custom and practice cannot be used to vary contract provisions).  Compare Vita v. Berman, DeValerio & Pease, LLP, 81 Mass. App. Ct. 748, 755 (2012), quoting from Lawrence v. Cambridge, 422 Mass. 406, 411 (1996) ("[I]n an ordinary contract, where matters are left open, the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance [of the parties]").

Because Simply Surgical's allegedly tortious conduct "was independent of" any allegedly defective manufacturing of the products by Iscon, the judge correctly concluded that it "had no common law right of indemnity against [Iscon]." Id. at 793-794.

Simply Surgical also argues error in the judge's denial of so much of its motion to amend the judgment that sought application of a contract rate and accrual date other than what was set forth in the original judgment. Simply Surgical, however, does not challenge the judge's finding that it failed to establish the contract interest rate or the date of breach. Interest on damages awarded for breach of contract "shall be added . . . at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand" (emphasis added), G. L. c. 231, § 6C, as appearing in St. 1982, c. 183, § 3, and "[i]f the date of the breach or demand is not established, interest shall be added . . . at [the] contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action." Ibid. We think the judge properly applied the statutory interest rate as of the date of commencement of the Simply Surgical's counterclaim. See Graves v. R.M. Packer Co., 45 Mass. App. Ct. 760, 771 (1998).

3. <u>Iscon's claims</u>.[11]  Iscon argues error in the judge's denial of its motion for judgment notwithstanding the verdict and to amend the jury award, because, it claims, the jury improperly deducted $79,589.55 from the nearly $140,000 that Iscon claimed to be owed.  We see no abuse of discretion or error of law.  See <u>Bartley</u> v. <u>Phillips</u>, 317 Mass. 35, 43 (1944).

"An account stated does not create a liability where none existed before; it merely determines the amount of a debt where liability already exists."  <u>Davis</u> v. <u>Arnold</u>, 267 Mass. 103, 110 (1929).  It is "a promise to pay whatever balance is thus acknowledged to be due."  <u>Rizkalla</u> v. <u>Abusamra</u>, 284 Mass. 303, 307 (1933).  Iscon submitted its account stated claim to the jury.  Accordingly, it was for the jury to decide whether there was an accounting, see <u>Berwin</u> v. <u>Levenson</u>, 311 Mass. 239, 247 (1942), and, if so, for how much.  See <u>Cavanaugh Bros. Horse Co.</u> v. <u>Gaston</u>, 255 Mass. 587, 591 (1926) ("The questions, what was to be believed, and what inferences were proper, were for the jury").  The judge correctly instructed the jury that it must determine "whether the account balance statement accurately sets

---

[11] We decline to address Iscon's argument that the judge should have awarded prejudgment interest from the date Simply Surgical filed its counterclaims against NEPG, instead of from the date that Iscon filed its crossclaims against Simply Surgical, because Iscon cites to no authority for the proposition that "action," as used in G. L. c. 231, § 6C, should be interpreted to mean Simply Surgical's claims against NEPG and not Iscon's claims against Simply Surgical.  See Mass.R.A.P. 16(a)(4).

forth the amount, if any, due Iscon."  Iscon did not object to the judge's instructions, and, as the judge aptly noted, the jury was free to "disbelieve any portion of the account."  We will not disturb his conclusion that the jury's verdict should stand.  See Freeman v. Wood, 379 Mass. 777, 781 n.9 (1980).

Amended judgment affirmed.

Order entered January 18, 2013, affirmed.