APPEALS COURT 
 
 JAMES KRUMSIEK, personal representative,[1] vs. COLLINS ELECTRIC COMPANY, INC., & others.[2]

 
 Docket:
 23-P-1467
 
 
 Dates:
 October 21, 2024 - January 27, 2025
 
 
 Present:
 Meade, Walsh, & Toone, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Corporation, Stock, Stockholder, Purchase by corporation of its own stock. Contract, Performance and breach, Construction of contract. Evidence, Pattern of conduct.
 
 

 Civil action commenced in the Superior Court Department on July 2, 2018. 
      The case was tried before David M. Hodge, J.
      John J. Egan (Daniel A. Ford also present) for Collins Electric Company, Inc.
      Timothy J. Perry (David W. Krumsiek also present) for the plaintiff.
      MEADE, J.  The plaintiff, James Krumsiek, as personal representative of the estate of Helen Krumsiek (estate) and derivatively on behalf of Collins Electric Company, Inc. (CEC), brought several claims against the defendants, CEC and two of its directors, James Collins and Lawrence Eagan.  In pertinent part, the estate claimed that CEC had breached the payment terms of a stock redemption agreement, as amended (SRA), between CEC and its shareholders, including the plaintiff's decedent, Helen Krumsiek, which provided for CEC's redemption of the CEC stock owned by each shareholder upon their death.  After a two-week jury trial, the jury found, in part, that (1) following the death of the plaintiff's decedent, CEC had failed to timely tender the "dividend payment in year of death" required by the fifth amendment to the SRA (fifth amendment); and (2) the amount owed by CEC to the estate under the formula established by the fifth amendment was $2,166,977.  Based on the jury's findings, the judge ruled in favor of the estate on its reserved claims for declaratory judgment, holding that the estate had the right to terminate the SRA under the SRA's termination provision, paragraph 9(d), and to retain ownership of its voting shares in CEC.
      On appeal, CEC claims, inter alia, that the judge erred by (1) excluding course of performance evidence regarding the meaning of the dividend payment in year of death provision set forth in the fifth amendment; and (2) permitting the estate to terminate the SRA, retain the shares, and recover contract damages thereunder.[3]  For the reasons discussed below, we vacate the portion of the amended judgment on jury verdict adjudicating the plaintiff's claim for breach of contract, and vacate the judgment on the pleadings, both entered on November 15, 2023, and remand the case for a new trial.
      Background.  CEC is a commercial electrical contracting corporation, organized under Massachusetts law, founded by John J. Collins in 1906.  In or around 1911, John J. Collins' brother, Timothy Collins, joined CEC, followed by Timothy Collins' son, William P. Collins, in or around 1919.  At the time of his death in 1950, William P. Collins was the majority stockholder of CEC.  The shares owned by William P. Collins were thereafter bequeathed to his wife, Helen V. Collins, and six children:  William A. Collins, Sally Collins, Donald Collins, Nancy (Collins) McKenna, Patricia (Collins) Eagan, and the plaintiff's decedent, Helen (Collins) Krumsiek.  Following the death of William P. Collins, his heirs purchased the minority shares of CEC, then owned by the heirs of CEC founder John J. Collins.  
      On February 4, 1963, the SRA was executed by CEC and all of its then-stockholders, including the aforementioned widow and  children of William P. Collins, with the purpose of preventing CEC stock from passing to persons outside of that group.  To effectuate this goal, paragraph 3 of the SRA requires, upon the death of each stockholder-signatory, that CEC purchase, and the estate of the stockholder-signatory sell, the shares of CEC owned by the stockholder-signatory's estate.  Paragraph 2 of the SRA establishes the formula for computing the redemption price for the shares; this formula has been revised on two occasions, most recently via the fourth amendment to the SRA, dated July 10, 1987 (fourth amendment).
      In addition to the redemption price, the fifth amendment to the SRA, dated February 21, 2000, contains a clause entitled, "Dividend Payments in Year of Death" (dividend in year of death clause), which, in part, provides for "a dividend equal to [one hundred percent] of the current years [sic] estimated operating net income . . . [prorated] for the portion of the year through the date of death plus [sixty] days . . . be paid the decedent's estate as part of the [b]uy [s]ell [s]ettlement."  The second paragraph of the dividend in year of death clause proceeds by stating, "[i]t is further agreed that if the actual earnings for the calendar year . . . exceed the estimated [prorated] net income[,] then an additional dividend of [fifty] percent of the additional prorated income . . . shall be paid to all stockholders including the estate."  
      At the time of her death on October 26, 2016, Helen Krumsiek owned seventy-six of the 439 outstanding shares in CEC, consisting of sixty-four voting shares and twelve nonvoting shares.  Unlike the sixty-four voting shares, whose disposition is governed solely by the SRA, the twelve nonvoting shares are separately and additionally governed by a nonvoting stock purchase agreement, dated May 8, 1997 (SPA).[4]  Paragraph 1 of the SPA establishes the redemption price for the twelve nonvoting shares and incorporates by reference the computational formula set by the SRA, as amended.  
      Following Helen Krumsiek's death, a dispute arose between the estate and CEC as to the redemption price and dividend payment in year of death required under the SRA.[5]  This suit followed.  Of particular relevance to CEC's appeal, the parties disputed two aspects of the dividend payment in year of death contemplated by the fifth amendment:  (1) whether the dividend in year of death clause referred to (a) the total earnings of CEC, or (b) the portion of CEC's total earnings allocable to the estate in accordance with the estate's fractional ownership; and (2) whether the dividend in year of death clause was applicable under circumstances in which the corporation's actual annual earnings were known, such that an earnings estimation was not performed.
      In support of its interpretation, CEC sought to introduce evidence of the construction of the dividend in year of death clause in connection with two prior stock redemptions that occurred under the SRA, after the execution of the fifth amendment:  the 2006 redemption of the shares owned by the estate of Sally Collins, and the 2016 redemption of the shares owned by the estate of William A. Collins.  However, in ruling on the estate's motion in limine, the judge determined that the parol evidence rule barred the introduction of such evidence, as "Krumsiek and the [e]state were not involved in [the two prior] redemptions, so as to constitute a prior 'course of conduct' between the parties."  
      The jury returned a special verdict in favor of the estate's interpretation of the dividend in year of death clause, finding, in part, that the total dividend payment in year of death owed by CEC to the estate amounted to $2,166,977.  The judge then ruled on the estate's requests for declaratory relief, adopting the jury's finding that CEC's failure to tender the $2,166,977 payment amounted to a material breach of the SRA, and finding that the estate was therefore entitled to terminate the SRA pursuant to paragraph 9(d).[6]  Thereafter, the estate elected to terminate the SRA and retain the sixty-four voting shares in CEC.  Notwithstanding the estate's termination of the SRA, the judge ruled that (1) the estate was entitled to the $2,166,977 dividend payment in year of death, plus statutory interest; and (2) the twelve nonvoting shares remained subject to the mandatory redemption terms of the SPA.
      Discussion.  1.  Course of performance evidence.  CEC claims that the judge erred in excluding evidence regarding two prior, post-fifth amendment stock redemptions that occurred pursuant to the SRA.  We agree.
      Preliminarily, we note that the judge improperly applied the parol evidence rule.  "The parol evidence rule . . . bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing" (emphasis added).  Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496 (1997).  Here, the parol evidence rule is inapplicable, as CEC did not seek to introduce a prior or contemporaneous agreement, but rather evidence of the postformation conduct of the parties to the SRA, purportedly elucidating the meaning of the dividend in year of death clause of the fifth amendment.
      With respect to postformation course of performance evidence, 
"[i]t is a general rule . . . that when the language [of a contract] is open to doubt, and parties whose interests are diverse have from the outset adopted and acted upon a particular construction, such construction will be of great weight with the court, and will usually be adopted by it" (citation omitted).
Pittsfield & N. Adams R.R. v. Boston & Albany R.R., 260 Mass. 390, 398 (1927).  As a default principle, "the subsequent conduct of the parties in interpreting the contract. . . . is properly taken into consideration only in cases where the language of the contract is ambiguous."  Savignano v. Gloucester Hous. Auth., 344 Mass. 668, 673 (1962).  However, the Supreme Judicial Court (SJC) has clarified that the ambiguity prerequisite to the admissibility of extrinsic evidence does not apply to the elucidation of a contract's terms, but only to their contradiction.  Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-754 (1973) ("When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms").  While Robert Industries addressed the admissibility of extrinsic evidence of the circumstances surrounding contract formation, see id., an equivalent principle has been acknowledged in the Commonwealth vis-à-vis postformation course of performance evidence.  See New England Precision Grinding, Inc. v. Simply Surgical, LLC, 89 Mass. App. Ct. 176, 183 n.10 (2016) ("While a course of performance may illuminate or supply missing contract terms, it will not be construed to contradict express terms").
      Here, the contractual interpretation purportedly implied by CEC's proffered course of performance evidence does not contradict the express terms of the fifth amendment, but rather elucidates its language and supplies missing terms.[7]  Therefore, the dividend in year of death clause does not need to be deemed ambiguous to consider the evidence at issue.  See New England Precision Grinding, Inc., 89 Mass. App. Ct. at 183 n.10.  That being said, we nonetheless conclude that the phrase in the first paragraph of the clause that requires payment of a "dividend equal to [one hundred percent] of the current years [sic] estimated operating net income," is ambiguous.[8] 
      In determining whether an ambiguity exists, "the court must first examine the language of the contract by itself, independent of extrinsic evidence."  Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008).  "Contract language is ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken" (quotation omitted).  Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999), quoting Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).  "In interpreting a contract, [t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.  The words of a contract must be considered in the context of the entire contract rather than in isolation" (quotations and citations omitted).  Rubin v. Murray, 79 Mass. App. Ct. 64, 75-76 (2011).  See Balles v. Babcock Power Inc., 476 Mass. 565, 572 (2017) ("To determine whether the language at issue is ambiguous, we look both to the contested language and to the text of the contract as a whole").
      Within the dividend in year of death clause of the fifth amendment, the first paragraph fails to specify whether the "dividend equal to [one hundred percent] of the current years [sic] estimated operating net income" refers to (a) one hundred percent of CEC's total estimated net income (interpretation (a)); or (b) one hundred percent of the portion of CEC's estimated net income allocable to the decedent's shares (interpretation (b)).[9]  See Black's Law Dictionary (12th ed. 2024)[10] (defining "dividend" as "[a] portion of a company's earnings or profits distributed pro rata to its shareholders . . . in the form of cash or additional shares").  While interpretation (a) reads naturally in isolation, its inconsistency with the second paragraph of the clause provides a sufficient basis for a "reasonable difference of opinion" in favor of interpretation (b).  See Suffolk Constr. Co., 47 Mass. App. Ct. at 720, quoting Fashion House, Inc., 892 F.2d at 1083. 
      In relevant part, the second paragraph of the dividend in year of death clause states, "if the actual earnings for the calendar year . . . exceed the estimated [prorated] net income[,] then an additional dividend of [fifty percent] of the additional prorated[11] income in excess of the . . . estimate, shall be paid to all stockholders including the estate."  Since the term "prorated" refers merely to the temporal proration described in the first paragraph, the second paragraph does not explicitly limit the contemplated dividend to the portion of additional, prorated income allocable to each stockholder in accordance with their respective ownership percentages.  Despite the absence of such a limitation, the term "dividend" as used in the second paragraph, is properly understood as a payment distributed on a per-share basis.  See Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999), quoting Bray v. Hickman, 263 Mass. 409, 412 (1928) ("So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties").  If the term "dividend" were not so limited, then the true-up dividend intended by the second paragraph, which is required to be paid "to all stockholders," could result in the obligation that the corporation pay total annual dividends in excess of actual annual earnings, rather than merely closing the gap between such figures.  The second paragraph's implicit limitation of the term "dividend" to a distribution paid on a per-share basis underscores the ambiguity in the first paragraph, making interpretation (b) a reasonable resolution.  See Dana v. Wildey Sav. Bank, 294 Mass. 462, 466 (1936) ("It is a general rule in the construction of a written instrument that the same word occurring more than once is to be given the same meaning unless a different meaning is demanded by the context").  The first paragraph contains no additional context that demands a different interpretation of "dividend" than that implied by the second paragraph.
      In the judge's memorandum of decision and order denying CEC's motion for a new trial, the judge summarized his decision to exclude the proffered course of performance evidence as follows:  "[since] Krumsiek and the [e]state were not involved in such redemptions . . . [the redemptions do not] constitute a prior 'course of conduct' between the parties."  While the record does little to clarify the judge's rationale in excluding such evidence, the judge's summary appears to impose, as a matter of law,[12] a barrier to the introduction of course of performance evidence that does not exist in Massachusetts case law; namely, that course of performance evidence is admissible only to the extent that it involves the construction of a contract by the parties to the action invoking such contract.[13]
      To the contrary, course of performance evidence need only involve the construction of a contract by the parties to such contract, which often, but not always, align with the parties to the action invoking the contract.  This proposition is consistent with the purpose of course of performance evidence:  to ascertain the intent of the parties to the contract.  See Pittsfield & N. Adams R.R., 260 Mass. at 398, quoting Insurance Co. v. Dutcher, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what parties meant, than to see what they have done").  Where, as here, a contract involves several parties,[14] "each potentially manifesting words or conduct with an individually-intended meaning, . . . a court must distill a dominant singular meaning to ascertain the legal effect of the agreement."  1 T. Murray & J. Hogue, Corbin on Massachusetts Contracts § 24.01[1] (2021).  The two post-fifth amendment stock redemptions between CEC and Sally Collins, and CEC and William A. Collins, elucidate the contractual intent of those parties, which is properly considered in distilling the dominant singular meaning of the dividend in year of death clause among all parties to the fifth amendment.  The lack of involvement by plaintiff's decedent in those redemptions is no bar to their admissibility as course of performance evidence; a holding to the contrary would not promote the distillation of a dominant singular meaning of the provision, but rather the opposite:  multiple, discrepant interpretations of it, depending on the particular party seeking its enforcement.
      The problem with the judge's conclusion is exemplified by Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy Fund, 466 Mass. 368, 378 (2013).  In Brigade, a dispute arose as to whether a corporate bylaw[15] calling for shareholder meetings "on at least an annual basis" required meetings every twelve months or once per fiscal year.  Id. at 368.  In conducting its inquiry, the SJC considered course of performance evidence:  the dates on which prior annual shareholder meetings had occurred.  Id. at 378.  Of particular import, such evidence included the dates of shareholder meetings that occurred prior to the time that the plaintiff, Brigade, had become a shareholder, and thus a party to the bylaw at issue.  See id. at 371.  The fact that Brigade had not been involved in, and presumably was not aware of, the timing of the annual shareholder meetings that occurred prior to its gaining shareholder status did not preclude the dates of such meetings from being introduced as course of performance evidence of the intended meaning of the bylaw.
      Here, the judge erred by excluding CEC's proffered course of performance evidence, and CEC is entitled to a new trial on the issues of the intended meaning of the dividend in year of death clause of the fifth amendment and CEC's performance thereof.  We note that the intent of the parties relative to this ambiguous provision is a question of fact to be determined at trial.  See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).  
      2.  Duplicative remedies.  While we conclude that the judge's exclusion of evidence regarding the two prior, post-fifth amendment redemptions requires the judgments to be vacated and the case remanded to the Superior Court for a new trial, which moots CEC's argument against the estate's ability to both terminate the SRA and obtain contract damages thereunder, we take the opportunity to clarify the potential remedies available on remand.
      If, on remand, CEC is found to have breached the dividend in year of death clause of the fifth amendment, then, with respect to the sixty-four shares of voting stock subject to the SRA, the estate may choose between the alternative remedies of (1) termination of the SRA pursuant paragraph 9(d); or (2) contract damages under the SRA.  See Dalton v. American Ammonia Co., 236 Mass. 105, 107 (1920) ("if [the plaintiff] chose to treat the contract as ended or rescinded . . . he could not thereafter consider it as subsisting and recover damages for its breach").  We note, however, that, even if the plaintiff were to elect to terminate the SRA under paragraph 9(d), the twelve nonvoting shares would continue to be governed separately by the redemption provisions of the SPA, which incorporates by reference the purchase price formula set forth in the SRA, as amended.   
      Conclusion.  For the reasons set forth above, we vacate the portion of the amended judgment on jury verdict adjudicating the plaintiff's claim for breach of contract, and vacate the judgment on the pleadings, both entered November 15, 2023.  The case is remanded to the Superior Court for further proceedings consistent with this opinion.  
                                          
 
So ordered.
footnotes

          [1] Of the estate of Helen Krumsiek.
               [2] Joseph Collins and Lawrence Eagan.
          [3] Because we conclude that the judge's exclusion of course of performance evidence requires us to vacate the judgments and remand for a new trial, we need not reach the remaining claims raised on appeal concerning the special verdict form and challenging the trial judge's partial denial of CEC's motion to alter or amend the judgments.
          [4] The termination of the SRA does not relieve the parties to the SPA of their obligations thereunder.
               [5] CEC did not raise the argument that the twelve nonvoting shares should be treated separately under the SPA until it filed its motion for entry of judgment notwithstanding the verdict. 
               [6] Paragraph 9(d) states that "[i]f [CEC] violates any provision" of the SRA, the agreement may be terminated "at the option of any Stockholder or Trustee who has not participated in the violation."
          [7] As discussed infra, the course of performance evidence proffered by CEC purportedly (1) elucidates the meaning of "dividend" within the dividend in year of death clause of the fifth amendment; and (2) supplies missing terms regarding the inapplicability of the dividend payment in year of death when the actual earnings of the corporation are known, such that no estimation of earnings is required.
               [8] We review the question of ambiguity de novo.  Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017).
          [9] We note that the use of the term "one hundred percent" is rational under either interpretation and is not determinative.  CEC is a corporation organized under Massachusetts law.  The board of directors of a Massachusetts corporation has broad discretion over the declaration of dividends.  See Crocker v. Waltham Watch Co., 315 Mass. 397, 403 (1944) ("When a corporation has net or surplus profits, unless some restraint is imposed by statute, charter, by-laws, contract, or otherwise, whether a dividend shall be declared and, if declared, its amount, rest in the sound discretion of the directors").  Since the CEC board of directors would otherwise retain near-complete discretion over the ratio of dividends to retained earnings, the specification of "one hundred percent" could reasonably be interpreted as setting that ratio for the contemplated dividend.  This term applies regardless of whether the dividend was intended to be distributed as a gross total or in proportion to the decedent's ownership shares.
                [10] The definition of "dividend" in the edition of Black's Law Dictionary current at the time of the fifth amendment's execution was the same as the edition currently in use.  See Black's Law Dictionary 492 (7th ed. 1999).
               [11] Here, the term "prorated" apparently refers to the prorated portion of the year through the date of death, plus sixty days.  This is the only use of the term "prorated" within the dividend in year of death clause before this point, and it supports the practical construction that the second paragraph functions as a "true-up" dividend, augmenting the initial, temporally prorated dividend distributed in accordance with estimated earnings.
               [12] "We review the judge's rulings on questions of law de novo."  Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 351 (2011).  However, to the extent that the judge's ruling was based on the irrelevance of the proffered evidence, this was an abuse of discretion.  See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013) ("We review a trial judge's evidentiary decisions under an abuse of discretion standard").  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
           Evidence regarding the manner in which the two prior redemptions were conducted certainly has the tendency to make more probable the intent alleged by CEC, and such intent is not just material, but central, to the determination of the action.  See Commonwealth v. Kennedy, 389 Mass. 308, 310 (1983); Harris-Lewis v. Mudge, 60 Mass. App. Ct. 480, 485 (2004).  As discussed infra, the interpretation of a term within a multiparty contract requires the distillation of the dominant singular meaning intended by the parties to such contract.  Thus, the meaning of the dividend in year of death clause intended by CEC, William A. Collins, and Sally Collins, all parties to the fifth amendment, is relevant to the distillation of the dominant singular meaning of that provision, and a ruling to the contrary amounts to a clear error of judgment.
               [13] While the record does not indicate that the judge factored it into his ruling, the estate also argues on appeal that the proffered course of performance evidence was properly excluded because the two post-fifth amendment redemptions "were not arm's length transactions."  Specifically, the estate claims that William A. Collins' service as executor of Sally Collins' estate for the redemption of her shares in 2006, and Joseph Collins' service as personal representative of William A. Collins' estate for the redemption of his shares in 2016, amounted to self-dealing between CEC and its senior officers, which precludes the admissibility of evidence surrounding such redemptions.  The estate cites no authority in support of this assertion; accordingly, we need not consider it.  See Mass. R. A. P. 16 (b) (2), as appearing in 481 Mass. 1628 (2019).  Notwithstanding this procedural defect, we note that the SJC has held that the "potential conflict" that arises when the executor of an estate simultaneously owes fiduciary duties to a corporation, the stock of which is being transacted between the estate and the corporation, standing alone, is not enough to make the executor unsuitable for that role.  See Colbert v. Hennessey, 351 Mass. 131, 145 (1966).
               [14] There are seven signatories to the fifth amendment to the SRA. 
          [15] The bylaws of a corporation are contractual terms between the corporation and its shareholders.  Brigade Leveraged Capital Structures Fund Ltd., 466 Mass. at 373.